# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| SHARON LYNNE WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 4:16-cv-01296-JEO |

## **MEMORANDUM OPINION**

Plaintiff Sharon Lynne Williams brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying her application for disability insurance benefits. (Doc. 1).[2] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc.

---

[1]Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

12).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Williams filed an application for a period of disability and disability insurance benefits for a disability commencing December 29, 2007.  (R. 15, 272, 290).[3]  Following the initial denial of her application, Williams requested a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision, finding that Williams was not disabled.  (R. 15-27).

Williams requested Appeals Council review.  The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  (R. 43-56, 168-70).  An additional hearing was conducted.  Thereafter, the ALJ issued the present decision denying Williams's application for benefits.  Williams again requested review of the decision.  The Appeals Council denied her request.  (R. 1-6).  Williams then filed this action for judicial review under 42 U.S.C. § 405(g) & 1383(c)(3).  (Doc. 1).

---

[3]References herein to "R.__" are to the page numbers of the administrative record.  That record is located at document 6.

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV. FACTS

Williams earned a high school diploma and a vocational degree in childcare and guidance. She has previous work experience as a breakfast supervisor/ manager, janitor, teacher's aide, and childcare attendant. (R. 113, 311, 321-22). She alleges disability beginning on December 29, 2007, due to arthritis, depression, fibromyalgia, sciatic nerve, and "foot damage." (R. 320-21).

Following the administrative hearing, the ALJ determined that Williams had the severe impairments of a history of anterior cervical diskectomy and fusion in 2007; right foot deformity with post-traumatic pain; osteoarthritis of the left elbow; obesity; depression; and anxiety. (R. 18). He concluded that, despite her impairments, Williams retained the residual functional capacity (RFC) to perform

---

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

a range of light work with limitations: she can occasionally stoop and crouch; she can never climb, drive, push and pull with either upper extremity, reach overhead with her left upper extremity, work around unrestricted heights, or use foot controls with her right foot; and she can perform simple, repetitive, non-complex tasks. (R. 20). Ultimately, the ALJ found that Williams was not disabled through her date last insured. (R. 26-27).

## V. DISCUSSION

Williams asserts that the ALJ did not afford adequate weight to a functional capacity evaluation (FCE) that was done in March 2012, which found that she was limited to occasional wrist flexion and extension. (Doc. 8 at 9-10 (citing R. 602)). As a result of this failure, she concludes, the hypothetical questions presented by the ALJ and the resulting testimony from the vocational expert are flawed. (Doc. 8 at 5-12).

Before examining Steps Four and Five of the sequential evaluation process outlined above, the ALJ determined that Williams retained the RFC to perform a range of light work. (R. 20-21). This determination is not contested by Williams. Even if it were contested, the court finds that it is supported by substantial evidence in the record. The challenge in this case concerns whether the ALJ improperly relied on answers to hypothetical questions posed to the vocational

6

expert that did not include all of Williams's established limitations and capabilities. To properly evaluate this claim, it is necessary to review the relevant evidence in the record that was before the ALJ concerning Williams's upper extremities, including her writs, elbows, and shoulders.

In January 2011, Dr. Laura Mason, a neurology consultative examiner, reviewed Williams's medical records and performed a physical examination of Williams. In the "History of Present Illness" section of her evaluation, she noted as follows:

> [Williams] fell on her left arm 11 years ago, but for the past 5 years has had left elbow pain and her left hand and arm up to the elbow will go numb. There are no particular fingers this happen[s] to; it is the entire hand. She is left handed and all activities make the fingers go numb.

(R. 549). During the examination, Dr. Mason found that Williams was not in acute distress and was able to maneuver on and off the examination table very well, and she did not require an assistive device to ambulate. The only abnormality Dr. Mason reported with regard to Williams's coordination/ station/gait was an inability to toe walk on the right. (R. 551). Dr. Mason did not identify any muscle atrophy, but noted normal muscle tone, 4/5 muscle strength in her left upper extremity, and 5/5 muscle strength in all other extremities. She also found that Williams's sensation was intact; and her range of motion was within

7

normal limits except for her shoulders. (R. 551-52). In the "Diagnoses" section of the report, Dr. Mason stated that Williams suffered from arthritis and arthralgias, mainly affecting the upper extremities and that she might have suffered a possible ulnar compression of her left arm. Dr. Mason recommended nerve conduction studies to further assess the situation. (R. 552).

Williams's medical records were reviewed on March 24. 2011, by Dr. Robert Heilpern, a non-examining state agency consultant. (R. 24, 576-83). He opined that Williams could lift and carry ten pounds frequently and twenty pounds occasionally; could sit and stand/walk for six hours each in an eight-hour workday; was limited to frequently pushing and pulling with her upper extremities; could never crawl or climb ladders, ropes, and scaffolds; could frequently perform all other postural activities; could not perform overhead reaching with either upper extremity, could perform frequent reaching in all other directions with her upper extremities, and could perform unlimited handling, fingering, and feeling; had no visual or communicative limitations; should avoid all exposure to dangerous machinery, commercial driving, and unprotected heights; could tolerate unlimited exposure to noise; and should avoid concentrated exposure to extreme heat/cold, wetness, humidity, vibrations, and fumes/gases. (R. 577-80).

8

Williams sought treatment from Dr. Ann Golden with Rome Orthopedic Surgeons in March 2012. Williams complained of left elbow pain. During the assessment period, she stated "that in 1996 she fell on the elbow and did not seek treatment." (R. 595). She also stated that "she gets off balance a lot and falls." (*Id*.) She further stated that she fell the previous week and went to a local emergency room. (*Id*.) She stated that she was "unable to fully extend the elbow" and because she is left hand dominant, she has trouble using her left arm for her daily activities. (*Id*.) She was diagnosed as having degnerative arthritis in the elbow and carpal tunnel syndrome. (R. 596). She was scheduled for testing and follow-up. (*Id*.) X-rays showed "advanced arthritic changes and joint space loss with osteophyte formation anteriorly as well as posterioly." (R. 598).

On March 19, 2012, Williams underwent an FCE administered by Advanced Rehabilitation. The FCE was completed by Don Koshute, an athletic trainer, and Cory Tucker, a physical therapist. (R. 602). The evaluation revealed that Williams would be able to perform "sedentary light to light medium" work with restrictions. (*Id*.) Specifically, the FCE report states:

> Assessment of non-material handling tasks or work activity shows the client with occasional tolerance for wrist motions flex/ext and sup/pro, grasping, reaching overhead and at shoulder level and performing table push-ups due to L elbow pain. With complaints of L elbow pain the client demonstrates frequent tolerance for table level reaching, fingering and fine manipulation.

(*Id*.) It is this assessment that Williams asserts was not properly considered by the ALJ.

Williams bears the ultimate burden of establishing that she was disabled. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). To establish entitlement to benefits, Williams had to demonstrate that she became disabled on or prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). When an ALJ's decision is premised on vocational expert testimony, to satisfy the substantial evidence requirement, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The hypothetical question need not include claimed impairments that are not supported by the medical evidence. *Ingram v. Comm'r*, 496 F.3d 1253, 1270 (11th Cir. 2007).

The Commissioner argues that Williams's claim fails because she has failed to show that the FCE performed by Koshute and Tucker was entitled to greater weight than the medical opinion from Dr. Heilpern. (Doc. 9 at 8). Under the deferential review standards applicable at this juncture, the court agrees.

As noted above, the FCE Williams relies upon was performed by athletic trainer Koshute and physical therapist Tucker. Under the applicable regulations,

neither is considered an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a). As non-acceptable sources, Koshute and Tucker cannot render "medical opinions," as defined by the regulations. *See* 20 C.F.R. § 404.1527(a)(2). Koshute and Tucker are considered "other sources," and the ALJ may consider the evidence from them. *See* 20 C.F.R. § 404.1513(d).

The ALJ's decision is clear that he considered the FCE. It undergirded his finding that Williams was capable of performing light work. (R. 23). That the ALJ did not adopt the FCE in whole is not error if the remainder of the record supports his determination in formulating the hypothetical questions he posed to the vocational expert.

The court finds that the record does support the ALJ's decision to rely on other evidence. The ALJ assigned significant weight to the opinion from Dr. Heilpern, who stated that Williams had no limitations in her ability to use her hands and wrists. (R. 24 (citing R. 576-82 (Ex. 11F)). This opinion is supported by the record, which includes a report from Dr. Mason, a neurologist, that indicates no deficiencies in Williams's wrist joints. (*See* R. 551). Accordingly, the court finds that the ALJ's decision affording greater weight to Dr. Heilpern's opinion is not error. State agency medical consultants, such as Dr. Heilpern, are considered experts in the Social Security disability programs, and their opinions

may be entitled to great weight if their opinions are supported by the record. *See* 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2)(i), (ii); Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A.). The ALJ was not required to afford greater weight to the FCE from non-acceptable sources when evidence from examining and reviewing physicians supports his determination.[5]

Based on the foregoing, the ALJ correctly posed a hypothetical question to the VE that reflected Williams's impairments and included the functional limitations required by the evidence of record. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("the ALJ must pose a hypothetical question which comprises all of the claimant's impairments"). Specifically, the ALJ asked the VE a hypothetical question that included functional limitations consistent with Williams's RFC. (R. 26, 94-95). The VE responded that an individual with her limitations could perform the representative work of cashier and retail sales attendant. (R. 95-96). The VE further testified that more than 350,000 of these positions exist in the national economy. (R. 95). This represents a significant number of jobs in the national economy. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 is a significant number of jobs). Accordingly, the ALJ

---

[5]In arriving at this determination, the court recognizes that the FCE was done closer in time to the ALJ's decision.

properly found Williams was capable of performing other work in the national economy available in significant numbers and was not disabled.

To the extent Williams argues that the ALJ should have found her disabled based on the VE's responses to hypothetical questions that included limitations regarding her ability to perform flexion and extension of her wrists, the claim is without merit. Substantial evidence supports the ALJ's RFC finding, and Williams has failed to demonstrate that the ALJ erred when he assessed the medical evidence. The ALJ was not required to include additional limitations in the hypothetical question to the VE in the present circumstance. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 27th day of September, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge